UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NICK PHILKO,**

      *Plaintiff*,

      Case No.: 13-CV-_____

**v.**

      Hon.: _____

**SET SEG INSURANCE SERVICES AGENCY, INC. d/b/a SET SEG,**

      *Defendant*.

___

**VAN SUILICHEM & ASSOCIATES, P.C.**
By:  Donald A. Van Suilichem (P25632)
and Kelly A. Van Suilichem (P69902)
Attorneys for Nick Philko
40900 Woodward Avenue
Suite 105
Bloomfield Hills, MI  48304
Telephone:  (248) 644-2419
Fax:  (248) 644-3963
dvslawyer@dvsemploymentlaw.com
kelly.van@kvslaw.com

**KLUCZYNSKI, GIRTZ, VOGELZANG**
By:  William Vogelzang Jr. (P29231)
Mark T. Ostrowski (P49761)
Attorneys for Defendant
5005Cascade Rd.
Suite A
Grand Rapids, MI 49546
Telephone:  (616) 459-0556
bvogel@kgvlaw.com
marko@kgvlaw.com

___

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, NICK PHILKO, by and through his attorney, DONALD A. VAN SUILICHEM of Van Suilichem & Associates, P.C., and for his Complaint against Set Seg Insurance Services Agency, Inc., d/b/a Set Seg, ("Set Seg"), states as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. Section 12101, et seq. ("ADA").

2. This Court has jurisdiction pursuant to the following statutes:

1

    a. 28 U.S.C. Section 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

    b. 28 U.S.C. Section 1343 (3) and (4) which gives district court jurisdiction over actions to secure civil rights extended by the United States government;

3. Venue is appropriate in this judicial district under 28 U.S.C. Section 1391 (b) because Plaintiff is a resident within the district, Plaintiff was employed by Defendant in a sales territory which included Southeastern Michigan and Defendant systematically conducts business within the district.

## PARTIES

4. Plaintiff is a citizen of the United States and resides in the County of Oakland, State of Michigan, which is in this judicial district.

5. Defendant is a for profit corporation with its principal place of business located at 415 W. Kalamazoo Street, Lansing, Michigan 48933.

## STATUTORY PREREQUISITES

6. On March 22, 2012, Plaintiff filed a timely Charge of Disability Discrimination with the Equal Employment Opportunity Commission (Charge #471-2012-01599) alleging that his February 1, 2012 discharge violated his rights under the ADA.

7. On May 16, 2012, Plaintiff filed an Amended Charge with the EEOC alleging retaliation for opposing discrimination in violation of the ADA.

8. On January 5, 2013, the EEOC issued to Plaintiff a Right to Sue Notice.

9. This Complaint is filed within the 90-day limitation period.

## **GENERAL ALEGATIONS**

10. Plaintiff was hired by Defendant effective Tuesday, January 3, 2012 as an Account Executive. Plaintiff was assigned a territory consisting of Southeastern Michigan and the Thumb area. Plaintiff was introduced to employees and asked to become knowledgeable with Set Seg policies and procedures. Plaintiff had lunch with several employees on January 3, 2012 all of who seemed to be very friendly and welcoming.

11. On Wednesday, January 4, 2012, Plaintiff and his manager Scott Fritz went on a road trip to four school districts. Following the meetings, Fritz provided his feedback of the meetings as part of the Set Seg training program. Other than providing some general feedback, Fritz indicated no problems with the performance of Plaintiff. In fact, Fritz was upbeat on Plaintiff's employment prospects.

12. On Thursday, January 5, 2012, Plaintiff experienced a seizure type of event while at the Defendant's home office in Lansing. This event affected his eyesight, speech and body coordination. After recovering his faculties, Plaintiff left the Set Seg office in Lansing and sought medical treatment at Beaumont Hospital where he spent the night undergoing tests. Plaintiff advised Fritz of his seeking medical treatment and the status of his condition.

13. On Friday, January 6, 2012, Plaintiff was released from Beaumont Hospital and spent the day at home recovering from the seizure the previous day. Plaintiff kept his supervisor Scott Fritz, Sales Manager, advised of the status of his medical condition. Fritz encourage Plaintiff to rest and not come into work. Plaintiff noticed the Fritz's tone was very formal and did not have the warmth previously exhibited by Fritz.

14. Plaintiff returned to work on Monday, January 9, 2012 and went on sales calls with Scott Fritz. Unlike the previous week, Fritz was very cool to Plaintiff and seemed angry with

Plaintiff. Plaintiff apologized for his seizure and having to leave work. Fritz didn't want to talk about the Plaintiff's medical condition. Fritz' demeanor, tone of voice and overall attitude towards Plaintiff was a sharp departure from his former attitude towards Plaintiff. The only thing that changed between the previous Wednesday and Monday was the fact that Plaintiff had his seizure on Thursday.

15. On Tuesday, January 10, 2012 Plaintiff was called into an unannounced meeting with Fritz and Carl Fry, who had been previously introduced to me as a human resources consultant for Set Seg. Fry seemed to lead the conversation pressing Plaintiff to divulge his medical condition and past health issues. While he stated that he was concerned about Plaintiff's health and safety, the tone was more of concern for the Company and the liability should Plaintiff have another seizure and the impact on his co-workers. Plaintiff explained that the seizure was caused by the fact the he had failed to take his medication for several days and instead had left the medication in his car. Plaintiff left the meeting with the feeling that his job was in jeopardy and that if he had another seizure he would be fired. Company liability and the impact of a seizure if meeting with a client was the major theme of this meeting rather than a real concern about Plaintiff's health or any accommodation that they could provide to assist him.

16. Following the meeting, Fritz advised Plaintiff that he should stay home to study for the Property and Casualty insurance exam. Fritz did, however, relent and allowed Plaintiff to come to the office periodically to interact with his co-employees regarding the business. While Plaintiff appreciated the time to study, it appeared that Fritz just didn't want Plaintiff in the office.

17. Fritz scheduled a sales meeting for Friday, January 20, 2012 but told Plaintiff that he did not need to attend. Plaintiff advised Fritz that he thought it was important to attend these meetings. Fritz finally relented and allowed Plaintiff to attend the sales meeting but did not appear to be pleased that Plaintiff would be in the office.

18. Following the January 10, 2012 health interrogation meeting, Plaintiff visited clients with Fritz on January 25, 2012.

19. During the three times that Fritz rode with Plaintiff, he used the opportunity following the meetings to provide feedback. Fritz described it as the normal training feedback to help Plaintiff learn the "Set Seg" way of selling insurance. While Fritz raised some issues he emphasized that they were minor in nature and that overall he was impressed with Plaintiff and his job knowledge and contacts. The demeanor of Fritz seemed to improve during the ride on January 25, 2012 and Plaintiff continued to work with Fritz.

20. Plaintiff was scheduled to ride with Fritz on Friday, January 27, 2012. Fritz instructed Plaintiff to stay home to study for the Property and Casualty insurance exam scheduled for the following Monday. Fritz said it was more important to pass the exam. Fritz did not indicate any concerns over Plaintiff's performance. Plaintiff was left with the impression that Fritz was pleased with his performance to date and he wanted to put the exam behind them so that he could devote 100% of his time to his sales duties.

21. On Monday, January 30, 2012, Plaintiff took the Property and Casualty exam.

22. On Tuesday, January 31, Plaintiff met with Fritz at approximately 8:00 AM to discuss Plaintiff's business plan and strategy for moving forward with his job. While Fritz had been cool towards Plaintiff since his seizure in January, he seemed much more engaged in plans for Plaintiff's development and getting his actively out into the field. Plaintiff was

  left with the impression of a very positive meeting with Fritz and Plaintiff's concerns about being terminated because of his seizure seemed to be behind him.

23. Set Seg had scheduled a major client conference at the Renaissance Center in Detroit for Wednesday, February 1, 2012. Fritz discussed Plaintiff's role at the meeting and seemed eager to get Plaintiff before the clients.

24. Plaintiff left the meeting on January 31, 2012 and returned to the Southeastern Michigan area to meet with individuals who had contacts with local schools.

25. At approximately 3:30 PM on Janury 31, 2012Plaintiff had an automobile accident at the corner of Woodward and Maple in Birmingham when he failed to stop fast enough when the car in front of him stopped suddenly.

26. Plaintiff followed the procedures of Set Seg and reported the accident to the proper authorities. He also advised Fritz of the accident by voice mail and e-mail.

27. Fritz did not call Plaintiff back.

28. On Tuesday, January 31, 2012, Fritz sent a text to Plaintiff at approximately 9:00 PM advising him that he would meet him at the Renaissance Center in Detroit on Wednesday, February 1, 2012 at 11:00 instead of at the client conference that afternoon as scheduled. Fritz indicated no reason for the special meeting. Plaintiff had been scheduled to attend a conference at the Renaissance Center on February 1, 2012. Plaintiff asked Fritz if the meeting was because of the auto accident. Fritz denied any connection but refused to give the reason for the conference.

29. At approximately 11:00 on Wednesday, February 1, 2012 Plaintiff appeared at the meeting hastily called by Fritz. Fritz advised Plaintiff that he was being terminated because "you just didn't fit in." No mention was made to performance issues and no specifics were

provided as to why Plaintiff did not fit in. Fritz advised Plaintiff that the Company would continue his pay and health insurance benefits through the end of February.

30. On Saturday, February 4, 2012, Plaintiff sent an e-mail to Fritz confirming the offer to continue his pay and benefits through February. Fritz did not respond.

31. On Monday, February 6, 2012 at approximately 1:02 PM Fritz responded to Plaintiff's e-mail stating: "I will have Lexi draft this letter and send. Nick I enjoyed getting to know you and wish you the best." Fritz did not deny that the offer was for salary and benefits through the end of February.

32. On Wednesday, February 8, 2012 at approximately 8:29 AM, counsel for Plaintiff sent an e-mail to Tim Averill at Set Seg advising of the representation of Plaintiff and that he was investigating a potential claim of an ADA violation as a result of Plaintiff's termination. Averill was asked to confirm the offer to continue salary and benefits through the end of February. Set Seg failed to respond on February 8, 2012.

33. On Thursday, February 9, 2012, at approximately 12:13 PM Plaintiff again asked Set Seg to confirm the agreement to pay his salary and health insurance through the end of February.

34. On Thursday, February 9, 2012 at approximately 12:53 PM Fritz for the first time responded to Plaintiff's request for confirmation of the agreement and denied that he offered to pay Plaintiff through the end of February.

35. Despite the promises on health insurance continuation, Plaintiff learned on Monday, February 6, 2012 that his health insurance had in fact been terminated.

36. Defendant Set Seg ultimately restored Plaintiff's health insurance though the end of February but only continued Plaintiff's salary through February 15, 2012.

37. By letter dated February 21, 2012, Plaintiff requested the initiation of Step 1 of the Set Seg Employee Complaint and Problem Solving Procedure to review the termination decision.

38. On February 29, 2012, counsel for Set Seg responded to the request for Step 1 initiation by denying his request.

39. On March 8, 2012, Plaintiff sent a second request to Lexi Borne at Set Seg requesting initiation of Step 1 of the Procedure.

40. On March 19, 2012, counsel for Set Seg responded again denying the request for a meeting.

## COUNT I-VIOLATION OF THE ADA

41. Plaintiff reincorporates by reference his allegations contained in Paragraph 1 through 40 as if restated herein.

42. Plaintiff's medical condition constitutes a handicap protected under the ADA.

43. Defendant made the decision to terminate Plaintiff's employment because of his handicap or alternatively because they considered him to be handicapped in violation of the ADA.

44. Defendant made no attempt to reasonably accommodate Plaintiff's medical condition in violation of the ADA.

## COUNT II RETALIATION IN VIOLATION OF THE ADA

45. Plaintiff reincorporates by reference his allegations contained in Paragraph 1 through 44 as if restated herein.

46. On February 1, 2012, Plaintiff was promised salary continuation and continuation of health insurance benefits through the end of February, 2012.

47. Following notice that Plaintiff was pursuing protection of rights under the ADA, Defendant breached its promise to continue Plaintiff's salary through February 2012 in retaliation for Plaintiff asserting his rights under the ADA.

48. Following notice that Plaintiff was pursuing protection of rights under the ADA, Defendant breached its Employee Complaint and Problem-Solving Procedure by denying him the right to raise issues relating to his termination in retaliation for Plaintiff asserting his rights under the ADA.

WHEREFORE, Plaintiff requests this Court to award him back pay and future pay and future benefits, emotional distress damages and award to him his costs and attorney fees.

## JURY DEMAND

Plaintiff demands trial by jury of his claims for violation of his rights under the ADA and for retaliation in violation of the ADA for asserting protection under the ADA.

Respectfully Submitted,

**VAN SUILICHEM & ASSOCIATES, P.C.**

By: s/Donald A. Van Suilichem
    **Donald A. Van Suilichem (P25632)**
**and Kelly A. Van Suilichem (P69902)**
Attorneys for Plaintiff
40900 Woodward Avenue, Suite 105
Bloomfield Hills, Michigan  48304
Telephone:  (248) 644-2132
Fax:  (248) 644-3963
dvslawyer@dvsemploymentlaw.com

Dated:  April 2, 2013     kelly.van@kvslaw.com